## MACKALL v. WILLOUGHBY.

## SAME v. SAME.

### APPEALS FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 274, 281.   Argued April 21, 22, 1897. — Decided May 24, 1897.

Willoughby, being counsel for Mackall in three cases numbered 2373 and 8118, both against Alfred Richards and 8038 *Mackall* v. *Mackall*, respectively, the latter agreed with him, after reciting the fact that, "in consideration of the services of said W. Willoughby as such counsel performed and to be performed, he hereby agreeing to conduct . . . No. 2373 to a final termination and adjudication by the court of last resort to the best of his ability as such counsel, the said Brooke Mackall, Jr., hereby agrees to allow and pay to him as compensation for such services, in addition to what has already been received by him, a sum equal to fifty per cent of such money as may be adjudged to the said B. Mackall, Jr., . . . in . . . No. 8118, by way of mesne profits, damages and costs, provided that if such fifty per cent be less than $5000, the said W. Willoughby shall have such sum of $5000, and . . . shall have a lien

therefor upon said judgment and property as may be recovered against
the said Alfred Richards." The litigation referred to in the agreement
related to lot 7, in square 223 in the city of Washington, on a portion of
which the Palace Market was erected. *Held* that the lien thus given to
Willoughby was on all the property that might be recovered in the
three cases.

IN May, 1892, Westel Willoughby filed a bill of complaint
in the Supreme Court of the District of Columbia against
Brooke Mackall, the Mutual Fire Insurance Company, Samuel
C. Wilson, trustee, and Leonard Mackall, trustee, and Oliver
Thompson, trustee. The principal object of the bill was to
establish an alleged indebtedness of Brooke Mackall to the
complainant and to charge such indebtedness on certain land
situated in the city of Washington. To this bill a demurrer
was filed on the part of Brooke Mackall, which was sustained,
and a decree was entered that the bill be dismissed. On ap-
peal to the Court of Appeals of the District of Columbia at
November term, 1893, the decree of the Supreme Court of
the District was reversed, and the cause was remanded to
that court for further proceedings. The other defendants dis-
claimed, and proceedings against them were discontinued, but
Brooke Mackall answered and filed a cross bill. The cause
was put at issue and evidence adduced. On May 29, 1894,
the Supreme Court of the District, upon final hearing, dis-
missed the original bill and the cross bill, but without preju-
dice to a certain action at law pending between the parties.
On January 24, 1895, a mandate was issued by the Court of
Appeals of the District, reciting that the decree of the Su-
preme Court of the District had been reversed, and remanding
the cause to that court with directions to pass a final decree
in conformity with the opinion of the Court of Appeals.

In the Supreme Court of the District on January 30, 1895,
a final decree was entered, adjudging an indebtedness of
Brooke Mackall to the complainant in the sum of five thou-
sand dollars, with interest from November 24, 1884, and de-
creeing that the same was a lien upon the land described in
the bill and that said land be sold, etc. On February 7, 1895,
an appeal was taken from this decree to the Court of Appeals,

which court, on motion, dismissed said appeal on May 17, 1895. 5 App. D. C. 162.

It appears by the record that on January 23, 1895, the defendant moved, in the Court of Appeals, at No. 361, January term of that court, for allowance of an appeal from the decree of the Court of Appeals, entered in January, 1895, to the Supreme Court of the United States, and this appeal appears to have been allowed on May 3, 1895, and constitutes No. 274, October 7, 1896, of the records of this court. An appeal from the decree of the Court of Appeals of April 23, 1895, 6 App. D. C. 125, dismissing, on motion, the appeal to that court was taken on April 23, 1895, and constitutes No. 281, October term, 1896, on the records of this court.

*Mr. Henry E. Davis* for appellant.

*Mr. Arthur A. Birney* for appellee.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The vital question depends for its answer on the interpretation to be given to the contract between the parties. It is in the following words and figures:

"This agreement made this 10th day of April, 1883, between Brooke Mackall, Jr., and Westel Willoughby, witnesseth:

"That whereas the said W. Willoughby has been for a considerable period acting as counsel in the case of *Albert Richards and others* v. *Brooke Mackall and others*, No. 2373, in equity, in the Supreme Court of the District of Columbia, and which is now pending before the Supreme Court of the United States, for the defendants in said suit, and whereas he is counsel for the plaintiff in the case of *Brooke Mackall, Jr.,* v. *Alfred Richards and others*, in equity, No. 8118 in the Supreme Court of the District of Columbia, and he is also counsel for the defendant in the case of *Leonard Mackall and others* v. *Brooke Mackall, Jr.*, No. 8038, in equity in said court:

"Now, therefore, in consideration of the services of said W. Willoughby as such counsel, performed and to be performed, he hereby agreeing to conduct the said above-mentioned suit of Richards and others, No. 2373, to a final termination and adjudication by the court of last resort to the best of his ability as such counsel, the said Brooke Mackall, Jr., hereby agrees to allow and pay to him as compensation for such services, in addition to what has already been received by him a sum equal to fifty per cent of such money as may be adjudged to the said B. Mackall, Jr., as aforesaid, and which may be recovered in said suit of *Brooke Mackall, Jr.* v. *Richards and others*, in equity, No. 8118, by way of mesne profits, damages and costs, provided, that if such fifty per cent be less than $5000, the said W. Willoughby shall have such sum of $5000, and the said W. Willoughby shall have a lien therefor upon said judgment and property as may be recovered against the said Alfred Richards; and the above compensation shall be received by the said W. Willoughby in full satisfaction for his services in the aforesaid matters in controversy as counsel, he to have no other compensation for such services.

"It is provided further, that if said causes Nos. 8038 and 8118, are not finally determined in the court sitting in special term, and an appeal is taken, for such services as may be necessary in appellate courts an additional compensation shall be allowed, which shall hereafter be agreed upon by the parties, and he shall also be allowed an additional compensation for services in No. 2373, which may be necessary after the decision of the Supreme Court of the United States upon the points now pending therein."

The construction put upon this agreement by the complainant is that he was entitled, on performing the services which he thereby agreed to render, to have a fee of not less than five thousand dollars, and to have the same declared a lien upon all the property that may have been recovered in the three cases named in said agreement as Nos. 2373, 8118 and 8038 on the docket of the Supreme Court of the District of Columbia, in which he had acted as counsel for the defendant, Brooke Mackall.

The theory of the defendant is that the compensation, in addition to what he had already received, was exclusively contingent upon recovery in cause No. 8118; that it was to be a sum equal to fifty per cent of such recovery; and that the lien contemplated was to be upon the property recovered in that cause, and upon that property only. And he now contends that, as there was no recovery in No. 8118, the complainant was entitled to nothing, and his bill should have been dismissed.

The litigation mentioned and contemplated in the agreement was over lot 7, in square 223, in the city of Washington. On a portion of the lot was erected a building known as the Palace Market. One Richards, who had furnished material for its construction, filed a mechanic's lien thereon and on the lot on which it stood. In proceedings to enforce payment of this lien, a sale was had by the marshal, at which sale Richards became the purchaser. The marshal's deed to Richards described the property sold as follows: "Beginning at the northeast corner of said square, and running thence south forty-four feet; thence westerly to the west end of the lot; thence in a northerly direction with the west line thereof to the north line of said lot; then with said northerly line to the place of beginning."

Cause No. 2373 was a bill filed by creditors of Mackall, including Richards, seeking to subject to sale for the satisfaction of their judgments all of the lot No. 7 not before sold by the marshal of the District to Richards, and asserting that Mackall had such an interest therein as rendered it liable to the satisfaction of such judgments. On May 1, 1873, the court adjudged and decreed as follows: "That the title to said real estate in the proceedings in the said cause mentioned — that is to say, to all of lot numbered seven, in square numbered two hundred and twenty-three, in the city of Washington, not heretofore sold by the marshal of the District of Columbia to the complainant Alfred Richards — is vested in the defendant Brooke Mackall, Jr.," and appointed trustees to sell the same. Upon exceptions to the sale and report thereof by the trustees, the court sustained the exceptions on the ground of the imperfect

description of the property to be sold, and subsequently directed another sale of "all that portion of lot seven in square 223, in the city of Washington, lying south of a line drawn from a point on the line of Fourteenth street, northwest, westwardly and parallel with New York avenue, to the west line of the said lot seven. This order is made without passing upon the validity of the said marshal's sale."

These exceptions were filed on behalf of Mackall by Willoughby. From the decree of the general term affirming this decree of sale an appeal was taken to this court, where it was held that the part sold to Richards in the mechanic's lien proceedings was only the part of the lot upon which the Palace Market stood. 112 U. S. 369.

Upon this decision Mackall paid the judgment creditors, and there was no sale of any part of the lot to satisfy them. The result, therefore, of case No. 2373 was that Richards' title, derived from his purchase under the mechanic's lien proceedings, was restricted to the Palace Market and that portion of the lot on which it stood; and that Mackall's title was affirmed to the rest of the lot.

In the meantime, on April 11, 1882, cause No. 8118 had been instituted. It was a suit in equity, the object of which was to recover possession of that part of lot seven which had been sold to Richards by the marshal in 1870, and also to recover the mesne profits while Richards had been in possession. The court below in special term dismissed the bill; but that decree was reversed in general term, the sale and conveyance by the marshal to Richards being set aside as void and of no effect. As between the parties to the suit, Mackall was declared to be the owner of the property, with a right to have the legal title conveyed to him, upon his paying Richards' claim as judgment creditor, as well as his disbursements in connection with said premises. The ground upon which the general term proceeded was that on account of the ambiguity and uncertainty in the description of the property, both in the advertisement and in the marshal's deed, the sale could not be sustained. *Mackall* v. *Richards*, 3 Mackey, 271.

From this decree an appeal was taken to this court, by

which on January 9, 1888, the decree below was reversed, and the cause remanded with directions to dismiss the bill, the court holding that the complainant was guilty of laches, and refusing relief on that ground alone. *Richards* v. *Mackall,* 124 U. S. 183.

It appears that after the decision of this court in 112 U. S. 369, restricting Richards' title to that portion of the lot on which the Palace Market stood, Richards regarded that decision as final, and abandoned all claim except to that part of the lot actually occupied by that building, and that Mackall took and remained in possession ever since.

Upon this state of facts, the Court of Appeals interpreted the agreement as providing that Willoughby was to receive a fee of not less than $5000, and to have the same declared a lien upon all the property recovered in the cases named in the agreement, and in which he had acted as counsel for Mackall.

The conclusion of that court was thus expressed:

"Whilst Willoughby's right to the sum of $5000, as a fee for his services in all this litigation is not now denied, it is contended, and was so held in the court below, that his lien therefor is limited to such property as was actually recovered, and cannot attach to this lot or any part of it, because it was not actually recovered in any of said suits, the only suit for actual recovery being No. 8118 aforesaid, which was defeated, as we have seen. We think that the word 'recovered' should not be so restricted in its meaning. There is no reason why the agreement should not be liberally construed. Its object was to give Willoughby a lien on the property which might be recovered — that is to say, secured or realized — by and through the litigation conducted by him, offensive and defensive. Richards, recognizing, as he was bound to do, that the title to the lot, outside the walls of the building, had been settled adversely to his claim, abandoned any possession he might have had and submitted it to Mackall. Mackall entered without opposition, and has since held peaceable, undisturbed and unquestioned possession. In the general sense of the word, he actually recovered his land through the services

rendered by Willoughby in cause No. 2373. He failed of recovery in 8118, through which he lost the title to the Palace Market lot, and Willoughby lost the contingent interest in the mesne profits expected to be recovered therein, in addition to the land. Willoughby's fee to the extent of the $5000 claimed was not contingent, but certain and fixed. Having as a matter of fact, through success in No. 2373, settled the title to a very valuable part of the lot, and enabled Mackall to retake peaceable possession thereof without further litigation necessary to assure him therein, we think his lien attached thereto under the construction of the contract declared on the former appeal, and which is adhered to."

We have not overlooked the ingenious argument of the counsel for the appellant, based on the phraseology of a prior agreement, and on statements of the briefs filed on behalf of Mackall, in the case of *Richards* v. *Mackall;* but, even if it were open for us to regard those papers, we do not perceive that they clearly point to a different construction of the present agreement than that imported by its own terms.

Upon the whole, we accept the interpretation put upon the contract by the Court of Appeals as a reasonable one; and the decree of the Court of Appeals is

*Affirmed.*