## CAMPEN *v.* THE TALBOT BANK OF EASTON, MARYLAND

[No. 243, September Term, 1973.]

*Decided May 17, 1974.*

The cause was submitted on brief to MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

Submitted by *Sidney S. Campen, Jr.*

No brief filed on behalf of appellee.

DIGGES, J., delivered the opinion of the Court.

Sidney S. Campen, Jr., appellant and a member of the bar of this State who maintains his office in Easton, Maryland, appeals from the judgment in the Circuit Court for Talbot County (Clark, J.) which established that his claim to a portion of the fund held by an escrow agent was inferior to that of The Talbot Bank of Easton, Maryland, the appellee.

The facts of this case are clear and not here in dispute. On December 4, 1970, Campen obtained for his client Anderson and Fleming, Inc., a judgment by confession in the amount of $15,011.70 against the Bay Corporation which, when recorded, created a lien upon the real estate owned by that latter company. This judgment is based on a cognovit note and is the aggregate of a claim for $13,038.00 principal and interest, $1,955.70 attorney's fee, and $18.00 court costs. Maryland Rules 620, 645.

Almost one year later, on September 14, 1971, The Talbot Bank obtained a judgment against Anderson and Fleming in the total amount of $18,837.54, and subsequent to this caused an attachment on that judgment to be laid in the hands of the Bay Corporation on May 10, 1972. In the early spring of that same year, the Bay Corporation entered into a contract for the sale of its Talbot County waterfront real estate holdings, and, as a consequence of this, settlement was conducted on June 7 in the law offices of Ernest M. Thompson, Esquire, who acted as the closing attorney. Present at this settlement were agents of the Internal Revenue Service claiming a lien on the proceeds for taxes owed by Anderson and Fleming; representatives of the Bay Corporation; appellee's attorney; the purchasers; and an associate from Mr. Campen's office who was there seeking payment of the Anderson and Fleming judgment. Because there were insufficient funds from the proceeds of sale paying that judgment in full to cover all of the claims being made against those moneys, there developed a dispute as to the priority among them. Consequently, it was agreed by all

those present that the funds would be paid to Mr. Thompson to be held by him in escrow until a determination could be made as to their proper disposition. With this arrangement, appellant's associate executed a release of the land being sold from the effect of the Anderson and Fleming judgment lien so that clear title would vest in the purchasers.

Immediately following settlement, the bank, on the same day, caused a second attachment to issue on its judgment against Anderson and Fleming which was laid in the hands of the escrow agent as garnishee on June 9. In response to this action, Mr. Thompson filed a plea in the Circuit Court for Talbot County confessing possession of $17,283.33, proceeds arising from the Bay Corporation land sale, and asserted that conflicting claims to this fund were being made by the Internal Revenue Service, The Talbot Bank of Easton, and Anderson and Fleming.[1] When on September 22, 1972 the court granted the appellee a judgment of condemnation absolute on its attachment, the appellant became apprehensive of losing an opportunity to collect his attorney's fee and filed a motion to quash that attachment. In support of this motion, Mr. Campen argued that the part of the escrow funds which represented the "attorney's fees" portion of the judgment belonged to him, and, therefore, the court could not order that the entire escrow fund, after satisfying the government's tax lien, be paid to The Talbot Bank. Following a hearing on this motion, Judge Clark ordered that the appellee's claim to the escrow moneys was superior to any which appellant may have and directed that the funds which remained after satisfying the obligation due the Internal Revenue Service be remitted to the bank in partial payment of its claim. It is from the judgment based on this decision that Campen appeals.

Appellant's argument here coincides with that which he urged in the trial court. He has consistently contended that the "attorney's fees" portion of the moneys held by Mr. Thompson in escrow were insulated from attachment by the

---

1. The trial court determined that the Internal Revenue Service has priority over each of the other claimants and no one on appeal challenges this ruling.

bank and should be paid to him for either one of two reasons. He first alleges, relying on well settled law (*Northwestern N. Ins. v. Wetherall*, 267 Md. 378, 384-85, 298 A. 2d 1 (1972); *Walsh v. Lewis Swim. Pool Constr.*, 256 Md. 608, 261 A. 2d 475 (1970); *Rowan v. State*, 172 Md. 190, 198, 191 A. 244 (1937)), that since "appellee as attaching creditor can obtain only the rights which his debtor . . . had to the property at the time of attachment . . ." and since his (appellant's) acquisition of complete title to $1,955.70 of the fund antedated any attachment, this amount could not be embraced by the bank's levy. Alternatively, as Anderson and Fleming's attorney, he claims a lien on the funds collected through his efforts for the value of his professional services. We deal with these contentions *seriatim*.

(i)

While it is true that the confessed judgment as entered against the Bay Corporation separately listed the principal debt, the attorney's fee, and the court costs, it is clear in this State that they together constitute the components of but one judgment in favor of the creditor and, unless assigned, one which is owned by him alone. This principle was made clear by Judge Sloan when, in *Webster v. People's Loan Etc. Bank*, 160 Md. 57, 62-63, 152 A. 815 (1931), speaking for this Court, he stated:

> "The judgments [on a cognovit note] for the principal debt and the fees or commissions are both payable by the defendant to the plaintiff, the latter by way of indemnity, to the extent stipulated, for the expense of employing an attorney to collect by suit at law the principal debt."

Accordingly, since appellant, prior to the bank's attachment, did not acquire title to any portion of the Anderson and Fleming judgment or the proceeds obtained in discharge of it, appellee had the right to attach the full amount of the fund which was in the hands of the escrow agent subject to the claim of the Internal Revenue Service.

(ii)

In considering whether appellant has an attorney's lien upon these proceeds for services rendered his client, as he maintains, we refer to the applicable law which was fully discussed by our predecessors in *Ashman v. Schechter*, 196 Md. 168, 173-76, 76 A. 2d 139 (1950) where Judge Delaplaine, in speaking for this Court, stated:

"At common law attorney's liens are of two kinds. One is a retaining lien on all papers, securities and money belonging to his client which come into his possession in the course of his professional employment. This is a general lien which gives him the right to retain such things until all his charges against his client are paid. *As the name implies, it is dependent upon possession.* It is, generally speaking, a passive lien and cannot be actively enforced either at law or in equity. . . . The other lien is a charging lien, which binds a judgment recovered through the attorney's efforts. This lien, which was confined at common law in England to the taxed costs, was not patterned after any doctrine formulated in other cases, but was based upon the broad principle of justice that an attorney, as a recognized officer of the court, should be paid his fees and expenses out of any judgment obtained as the result of his labor and skill. . . .

\* \* \*

"In Maryland [, as in most states,] an attorney who has obtained a judgment for his client has no lien for an attorney's fee on the judgment *which has not been reduced into possession by actual collection,* but his claim other than for the taxed costs must be asserted like a claim arising upon any other contract. . . . The charging lien, as distinguished from the retaining lien, [except when created by statute (*e.g.*, Maryland Code (1957, 1972 Repl. Vol.) Art. 63, §§ 46-48 — relating to

attorney's lien in cases involving an accident not covered by the Workmen's Compensation Act, see *St. Joseph Hospital v. Quinn*, 241 Md. 371, 216 A. 2d 732 (1966); and Code (1957, 1964 Repl. Vol.) Art. 101, § 57 — relating to attorney's lien in Workmen's Compensation cases, see *Hoffman v. Liberty Mutual*, 232 Md. 51, 191 A. 2d 575 (1963)),] has never been recognized in Maryland." (emphasis added).[2]

While the appellant acknowledges that, in the absence of a statute, a charging lien is not recognized in this State, he suggests, nevertheless, that his claim for an attorney's fee is entitled to priority over the bank's levy because he has acquired and maintained sufficient possession of the funds so as to create a valid retaining lien. His argument, simply stated, is that Mr. Thompson is his agent, and, since that which is in the hands of an agent is, according to the law, in the possession of his principal, it follows that the funds which are held by Mr. Thompson are legally possessed by the appellant. In answering this, we need not pass upon the question of whether possession by an attorney's agent is sufficient to satisfy the requirements for maintaining a retaining lien since we cannot find support for appellant's contention that Mr. Thompson is his agent. As we have previously mentioned, the record reveals that this settlement attorney was selected as "escrow agent" by agreement of all the competing claimants to hold that portion of the proceeds from the sale of Bay Corporation's real estate which would have been utilized to discharge that company's obligation to Anderson and Fleming. By the very nature of this arrangement, whether it is more accurately termed an escrow or trust (for a discussion of the technical distinction see *Citizens' Nat. Bank v. Parsons*, 167 Md. 631,

---

**2.** That a charging lien is recognized in England but not in most of this country springs from the fact that in England the fee of an attorney or solicitor is fixed by rules of court and collected as a part of the court costs; while in the United States, in nearly all cases, lawyers' fees arise from a contractual relationship which exists between the attorney and his client. For a fuller discussion of this see Ashman v. Schechter, 196 Md. 168, 175-76, 76 A. 2d 139 (1950).

638-39, 175 A. 852 (1934)), it is evident that Mr. Thompson was not appellant's agent. This is so as there is a fundamental difference between serving as a traditional agent and acting as an escrow agent or trustee. A traditional agent is one who consents to act on behalf of and is subject to the control of his principal, *Restatement, Second, of Agency* § 1 (1958), while an escrow agent, like a trustee, is a stranger to all parties in the sense that he is insulated from their dictates and acts subject only to the control of the conditions and specifications contained in the escrow or trust agreement. The phrase "escrow agent" is probably a misnomer. One who serves in this capacity might more accurately be described as an "escrow's agent" or "escrowee", *i.e.*, the active instrumentality which has been designated to effectuate the purpose for the escrow arrangement. Clearly, therefore, Mr. Thompson could not hold these funds simultaneously as an escrowee and as Mr. Campen's agent, and, consequently, appellant's argument misses the mark. Indeed, among the purposes for selecting this vehicle, which the parties have characterized as an escrow arrangement, was the desire to preclude the proceeds from passing to Anderson and Fleming and to prohibit any of the claimants from individually obtaining possession of these moneys until their respective rights could be judicially or otherwise determined. This was accomplished by the delivery of the *res* into escrow which effectively transferred possession away from the hands of any one of the parties or their agents and into those of the escrowee.

Accordingly, as appellant has failed to establish under either theory his entitlement to a portion of the proceeds, we shall affirm the final order of the trial court.

*Order affirmed.*
*Costs to be paid by the appellant.*