William B. WOLF, Jr., et al., Appellants,

v.

Peter R. SHERMAN, et al., Appellees.

No. 95–CV–825.

District of Columbia Court of Appeals.

Argued Jan. 30, 1996.

Decided Aug. 30, 1996.

Roger D. Luchs, Washington, DC, for appellants.

Douglas E. Fierberg, Washington, DC, for appellees.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

STEADMAN, Associate Judge:

This case involves a dispute between two creditors, both of whom claim a lien on es-

crowed funds of their mutual debtor. One creditor is the appellee law firm,[1] which is the escrow holder and claims to have an attorneys' lien on the funds. The competing creditor is the appellant investment partnership,[2] which claims to have a lien on the funds pursuant to a creditor's bill suit brought to enforce a judgment in appellant's favor against the debtor.

The appellant asserts that the attorneys' lien on the funds is invalid because (1) such a lien can arise only where the client has no personal liability for payment of the attorneys' fees and the sole source of payment is the property upon which the lien is claimed; and, in any event, (2) such a lien cannot be created upon funds held in escrow by an attorney.[3] Appellant also asserts that the trial court had an obligation to examine the reasonableness of both the attorneys' fees agreement and the amount of the fees themselves, which the trial court refused to do.

The trial court granted summary judgment for the appellee. We affirm.

## I.

For purposes of this appeal, the relevant facts are undisputed and may be briefly stated as follows. William S. Bergman & Associates, Inc. ("WSBA") was the tenant of appellant partnership Midcity Investment Company ("Midcity"). WSBA defaulted under the lease. In 1990, Midcity obtained a judgment for $67,383.90 (plus interest and costs) against WSBA, the bulk of which it was unable to collect.

In June 1991, a jury returned a verdict in excess of $100,000 in WSBA's favor in litigation against a former employee, William R. Dyer. Following an extended series of post-verdict matters, the trial court entered a final judgment on the verdict in July 1993. Pending the appeal of that judgment, in October 1994 a "Consent Order and Agreement Staying Execution" was entered, whereby Dyer placed $80,000 in escrow with WSBA's law firm, Sherman, Meehan & Curtin, P.C. ("SMC"). The funds therein were to be disbursed in accordance with the outcome of the appeal. In April 1995, we affirmed the judgment in favor of WSBA in all respects.[4]

In December 1994, however, after learning of the pending lawsuit by its debtor, WSBA, against Dyer, Midcity had instituted what it terms a creditor's bill suit against SMC to cause the funds in the escrow account to be paid to Midcity in the event WSBA prevailed on appeal. SMC asserted in its answer that it had a "common law and contractual lien" on the escrowed funds. A 1992 fee agreement between WSBA and SMC expressly provided that SMC would have a lien on any funds recovered as a result of WSBA's suit against Dyer and that with respect to work on the *Dyer* appeal, SMC would charge 125% of its normal hourly rates. SMC moved for summary judgment, claiming that it had an attorneys' lien on the escrowed funds. Midcity filed a cross-motion for summary judgment, asserting that as a matter of law no attorneys' lien existed. The trial court entered summary judgment in favor of SMC, and Midcity took the appeal now before us.

## II.

Although defined in various ways, a valid lien for purposes of this opinion may be viewed as a "[q]ualified right of property

---

1. Appellant sued the three name partners in the firm as individuals, rather than the firm itself (a professional corporation), on the ground that the escrow account did not indicate, by inclusion of the words "P.C.", that the professional corporation, rather than the individual partners, was the escrow agent. Appellant conceded at oral argument that this issue is in no way determinative, at least if the attorney's lien is valid, as we here hold. Therefore, for convenience we refer to the appellee law firm in the singular as the appellee.

2. The suit was brought by the three general partners of the partnership. For convenience, we refer to the appellant in the singular.

3. Appellant concedes that if appellee's lien is valid, it has priority over any lien of appellant. Since we hold that appellee does have a valid attorneys' lien, we do not reach the issue whether in fact any lien on appellant's behalf was created by the institution of a creditor's bill suit, or any issue of mootness based on the distribution of the funds from the escrow account which has now occurred.

4. *Dyer v. William S. Bergman & Assoc.*, 657 A.2d 1132 (D.C.1995).

which a creditor has in or over specific property of his debtor, as security for the debt or charge or for performance of some act." BLACK'S LAW DICTIONARY 832 (5th ed. 1979). The creditor with a valid lien generally has a claim upon the property superior to unsecured creditors and to junior lienholders upon the same property, but subordinate to the like interests of prior lienholders.

■ Liens may arise in several ways. Certain liens arise by statute, independently of the intent of the parties, as in the case of a mechanic's lien, D.C.Code § 38–101 (1990 Repl.), or real property tax lien, D.C.Code § 47–1312 (1990 Repl. & 1996 Supp.).[5] At the opposite extreme are express liens created by express agreement of the parties. Mortgages or deeds of trust with respect to real property, D.C.Code §§ 45–701 to –720 (1996 Repl.), and Article 9 security interests with respect to personalty, D.C.Code §§ 28:9–101 to –507 (1996 Repl.), are common express liens.[6] Liens that arise by operation of the common law[7] apart from statutes, notably equitable liens, occupy a middle ground. Broadly speaking, equity may impose a lien to effectuate some underlying agreement between debtor and creditor or in other circumstances where justice requires. *See, e.g., M.M. & G., Inc. v. Jackson,* 612 A.2d 186, 191 (D.C.1992) (equitable lien for value of improvements made by bona fide purchaser to property conveyed by forged deed).

■ The common law as applied in the District of Columbia recognizes two distinct types of liens applicable to a claim against a client for attorneys' fees: the "retaining lien" and the "charging lien." The retaining lien attaches to property of the client in the possession of the attorney and entitles the attorney to retain possession of that property until the fee is paid.[8] *See Lyman v. Campbell,* 87 U.S.App.D.C. 44, 45–46, 182 F.2d 700, 701–02 (1950). The "charging lien" arises when an attorney obtains a judgment or decree for a client, and has been characterized as "'merely a claim to the equitable interference by the court to have that judgment held as security for his debt [the attorneys' charges against the client].'" *Id.* at 46, 182 F.2d at 702 (quoting *Barker v. St. Quintin,* 12 M. & W. 441 (1844)). Unlike the retaining lien, the charging lien is not dependent on possession. *Id.*

■ The District's rule on charging liens is narrower than the English common law rule. *Lyman, supra,* 87 U.S.App.D.C. at 46, 182 F.2d at 702. In order for a charging lien to attach in this jurisdiction, "it is indispensable that there exist between the client and his attorney an agreement from which the conclusion *may reasonably be reached* that they contracted with the understanding that the attorney's charges were to be paid out of the judgment recovered."[9] *Elam,*

---

5. The District has no statute governing liens by an attorney against a client for attorneys' fees. *Elam v. Monarch Life Ins. Co.,* 598 A.2d 1167, 1168 n. 2 (D.C.1991).

6. Statutes may regulate the formalities for the creation and perfection of valid consensual liens and the circumstances in which they can be created and enforced. See note 10 *infra.*

7. We use the phrase "common law" here broadly to encompass those legal principles derived from the English secular courts, including those both of law and equity.

8. Classically, however, the attorney can take no steps to realize upon the property so held to satisfy the unpaid fee; the only effect of the "lien" is to permit the attorney to bring pressure upon the client by withholding possession of the property in question. 2 STUART M. SPEISER, ATTORNEYS' FEES § 16.5 (1973 & Supp.1994) [hereinafter SPEISER]. In this respect, the retaining lien is similar to other common law liens protecting certain parties in actual possession of their debtor's property. 51 AM JUR.2D *Liens* §§ 20, 21 (1970); *see, e.g., Winton Co. v. Meister,* 133 Md. 318, 105 A. 301 (1918) (common law mechanic's lien).

9. For this reason we have at times, somewhat confusingly perhaps, referred to charging liens as "contract liens," even though they arise by operation of law in the absence of an express agreement between the parties to create a lien. *See, e.g., District of Columbia Redevelopment Land Agency v. Dowdey,* 618 A.2d 153, 159 (D.C.1992) (quoting *Continental Casualty Corp. v. Kelly,* 70 App.D.C. 320, 322, 106 F.2d 841, 843 (1939)). The "contract" referred to in the charging lien situation is simply the agreement that the attorneys' fees will be paid out of the judgment, as a result of which an equitable lien is created by operation of law. *See* 1 SPEISER § 2.33 (distinguishing express liens from equitable liens arising from a contract for contingent fee). This is quite different from a contract expressly creating

*supra* note 5, 598 A.2d at 1169 (quoting *Pink v. Farrington*, 67 App.D.C. 314, 316, 92 F.2d 465, 467, *cert. denied*, 302 U.S. 741, 58 S.Ct. 143, 82 L.Ed. 572 (1937)). A charging lien does *not* depend upon an agreement that the attorney shall have a *lien* upon the judgment; in fact, only in the absence (or inadequacy) of an express lien does the question of a possible equitable lien arise. 1 SPEISER § 2.33.

 Equitable liens, like other forms of equitable relief, are generally premised upon the unavailability of other adequate remedy. *See generally District of Columbia v. Wical Ltd. Partnership*, 630 A.2d 174, 184 (D.C.1993); *Marshall v. District of Columbia*, 458 A.2d 28, 29 (D.C.1982). In the attorneys' fees context, the charging lien may protect the attorneys' claim of compensation in certain circumstances. This does not, however, foreclose the making of an express agreement between the attorney and client to create a lien upon specific property of the client as security for the payment of attorneys' fees. *Bluxome St. Assoc. v. Fireman's Fund Ins. Co.*, 206 Cal.App.3d 1149, 254 Cal. Rptr. 198, 201 (1988). An express lien may grant rights beyond those created by operation of law through the charging lien. *Kodenski v. Baruch Oil Corp.*, 5 Misc.2d 809, 161 N.Y.S.2d 301, 303–04 (N.Y.Sup.Ct.1957). The client may subject other property presently owned by it to the lien or the client may, instead or in addition, create an express lien upon any judgment that the attorney obtains for the client. Attorneys and clients should be no different from any other creditors and debtors in this regard. "[A]n express agreement between an attorney and his client that the attorney shall have a lien on property recovered for his services may be given effect." SPEISER § 2.33.

Almost a century ago the Supreme Court of the United States, in a case arising from this jurisdiction, recognized that an attorney is free to create an express lien against a recovery by an attorney for a client. *Mackall v. Willoughby*, 167 U.S. 681, 17 S.Ct. 954, 42 L.Ed. 323 (1897). In *Mackall*, an

a lien securing the attorneys' fees, which the law enforces in accordance with the terms of the agreement.

attorney and his client agreed that in consideration of the attorney's continuing to defend two separate law suits and pursuing a third, the attorney would be entitled to a fee equal to fifty per cent of any recovery, but in no event less than $5,000, and further agreed that the attorney "shall have a lien therefor upon said judgment and property as may be recovered." *Id.* at 683–84, 17 S.Ct. at 955. The case did not involve a contingent fee agreement and the fee secured by the lien apparently related to services already performed as well as those to be performed. *Id.* at 684, 17 S.Ct. at 955. The client as plaintiff recovered no money, but as defendant was partially successful in retaining ownership of the property at issue. *Id.* at 686–87, 17 S.Ct. at 955–56. The Supreme Court affirmed the decision of the Court of Appeals of the District of Columbia imposing an attorneys' lien for $5,000 upon the real property retained,[10] enforcing the lien in accordance with its interpretation of the express agreement of the parties. *Id.* at 687–88, 17 S.Ct. at 956.

Here, SMC bases its claim upon this principle of an express lien. SMC invokes the explicit language of its Retainer Agreement with WSBA, entered into after the trial court judgment in WSBA's favor:

> We have agreed to continue to represent you in the *Dyer* appeal under the following terms and conditions: (1) It is understood and agreed that Sherman, Meehan & Curtin, P.C. shall have a lien against and shall be entitled to be paid from any sums that are recovered or awarded by way of agreement, settlement, judgment, or any other manner in the *Dyer* matter for all fees due and owing from your business.

SMC asserts, correctly, that the language used by WSBA and SMC to create the lien in favor of SMC could not be any clearer, and that the funds placed in escrow were clearly payable to WSBA in settlement of the judgment. The trial court essentially agreed with this analysis in granting summary judgment for SMC.

10. The Court of Appeals interpreted the provision in the fee agreement for a lien on "[property] recovered" to include property retained.

## III.

Although not disputing the clear intent of the parties to create an attorneys' lien in favor of SMC, Midcity presents two arguments against the validity of the claimed lien as a matter of law. First, it asserts that an attorneys' lien can be created only where the client has no personal liability for payment of the attorneys' fees; that is, the sole source of payment of the fees must be the property upon which the lien is claimed. Second, it asserts that an attorney may not claim an attorneys' lien on funds the attorney holds as escrow agent. We address each argument in turn.[11]

## A.

 It is, of course, possible for a creditor and debtor to agree that a debt shall be paid only out of particular property in which a security interest is created, a situation perhaps most commonly seen in the so-called non-recourse mortgages. *See, e.g, Berks Title Ins. Co. v. Haendiges,* 772 F.2d 278 (6th Cir.1985). More typically, however, the security interest is given in the property as protection for the creditor in addition to the personal liability of the debtor on the debt.[12] *See, e.g., Yasuna v. Miller,* 399 A.2d 68, 72 (D.C.1979); *see generally* 4 JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 34–4 (4th ed. 1995) ("Creditor's Alternatives Upon Default").

In arguing that this latter sort of arrangement simply cannot exist with respect to agreements regarding attorneys' fees, Midcity relies upon language from some of our cases suggesting that an equitable charging lien only arises if "the parties 'looked to the fund itself for payment, and did not rely upon the personal responsibility of the owner

of the claim of which the fund was a result.'" *Elam, supra* note 5, 598 A.2d at 1169 (quoting *De Winter v. Thomas,* 34 App.D.C. 80, 84 (1909), *cert. denied,* 215 U.S. 609, 30 S.Ct. 411, 54 L.Ed. 347 (1910)); *see also Dowdey, supra* note 9, 618 A.2d at 159.

This argument, however, is misdirected. Quite simply, SMC does not assert an equitable charging lien but an express lien. *Elam, Dowdey,* and like cases concerned the propriety of imposing an equitable lien in the absence of an express lien. As explained above, an equitable charging lien may arise under our law if the parties intended that the attorney would be paid out of the fund. It is understandable that in determining the existence of such an intent, the court could look to the question of the client's personal liability as well as other circumstances. Thus, in *Elam* we framed the issue as whether a contingent fee agreement whereby the client agreed to pay a fee "equal to [one-third] of any sum I shall recover," and that in the event of non-recovery "my attorney shall receive nothing for his services," created an equitable lien or simply a cause of action in favor of the attorney. We concluded that "[i]mplicit in the agreement ... was the attorney's understanding that he would look to the fund recovered for payment and not to the personal resources of Elam." *Elam, supra* note 5, 598 A.2d at 1170. The unmistakably contingent nature of the attorneys' fee provided a basis for inferring the intent necessary for an equitable lien to arise. *See id.* But it does not follow that only a contingent fee agreement or an agreement that liability be limited to the recovery itself can form the basis for an attorneys' lien, even in a case where the presence of an express lien renders resort to equitable doctrines inapplicable, as here.[13]

---

**11.** Midcity makes no other arguments against the validity and priority of SMC's claimed lien, such as failure to comply with any requisite formalities of formation or notice.

**12.** In certain situations, it may be required that the creditor look first to the property in satisfaction of the debt before turning to the debtor to satisfy any deficiency. Likewise, the right to a deficiency may be affected by the manner in which the security interest in the property is realized upon.

**13.** As the United States Court of Appeals for the District of Columbia Circuit noted, in its opinion certifying the attorneys' lien issue in *Elam* to this court: "[the language in earlier cases] might be taken to suggest that restriction to the fund is a prerequisite to creation of a lien, but we think the more natural reading to be simply that where there is clearly no right other than one against the fund, the agreement would be meaningless unless it established a lien on the fund." *Monarch Life Ins. Co. v. Elam,* 286 U.S.App.D.C. 396, 400, 918 F.2d 201, 205 (1990).

Similarly, in *Dowdey* we were called upon to determine the effect of an oral agreement whereby the clients "were to pay [the attorney] one-third of the equity in the 14th Street property which [the attorney] either preserved or recovered on their behalf." *Dowdey, supra* note 9, 618 A.2d at 156. As in *Elam*, there was no express agreement either creating a lien or providing for payment out of the fund. *See id.* Therefore, the issue was whether the agreement and surrounding circumstances sufficiently indicated that the parties looked to a particular source for payment of the contingent fee, so that the court would recognize an equitable lien on the property. *Id.* at 159. We held that the evidence was sufficient to support the trial court's finding that the parties looked to the judgment as the source of payment, justifying imposition of an equitable lien.[14] *Id.* at 160.

Otherwise put, in *Elam, Dowdey* and like cases, we were faced with the task of determining whether, from a contingency agreement for attorneys' fees and other indications of intent, we could infer an agreement that the attorney should be paid out of any funds recovered. Once such an agreement was found, the court held, in turn, that an equitable charging lien arose on the funds in favor of the attorney.[15] The contingent nature of the attorneys' fees and the asserted lack of any personal liability on the client's part were factors evidencing an agreement that the fees were to be paid out of the funds recovered.[16]

Whatever the merits of Midcity's argument with regard to the circumstances under which a charging lien arises by operation of law—an issue we need not further explore here—any limitations implied in *Elam* are inapplicable where the parties created an express lien. *See Woods, supra,* 254 Cal. Rptr. at 201 (limitations on creation of equitable liens inapplicable to express liens). Midcity does not claim that express liens securing debts other than for attorneys' fees are invalidated where the parties may look beyond the liened property for payment of the underlying debt, nor could such a broad claim possibly be sustained. We see no reason why an express lien cannot be created to provide additional security for the payment of attorneys' fees, just as with any other kind of debt; indeed, *Mackall, supra,* stands as strong authority for this very proposition. In its opinion certifying certain issues in the *Elam* case to us, the United States Court of Appeals for the District of Columbia Circuit observed that the appellant "has offered no policy reason why parties should not be free to create both a right against the client and a lien." *Elam, supra* note 13, 286 U.S.App. D.C. at 400, 918 F.2d at 205.[17] Nor has Midcity done so in this appeal to us.

14. Midcity also relies upon *De Winter v. Thomas,* 34 App.D.C. 80 (1909), *cert. denied,* 215 U.S. 609, 30 S.Ct. 411, 54 L.Ed. 347 (1910). As in *Elam* and *Dowdey*, however, *De Winter* did not involve a lien expressly created by agreement of the parties.

15. Even where an agreement is explicit in stating that the attorney looks to the fund for payment of the fee, the creation of the lien itself is a further step occurring by operation of law. Such a situation thus would be distinct from an agreement where the lien itself is created by agreement of the parties, as here.

16. In this regard, it is worth reading closely the language relied upon by appellant to support its assertion that an attorneys' lien in all circumstances is inconsistent with any personal liability on behalf of the client: "[t]he test is whether the parties 'looked to the fund itself for payment, and did not rely upon the personal responsibility of the owner of the claim of which the fund was to result.'" *Elam, supra* note 5, 598 A.2d at 1169 (quoting *De Winter, supra,* 34 App.D.C. at 84). It

could be argued that it is quite possible for contracting parties to "look to" the fund itself for payment and not "rely upon" the personal responsibility of the debtor, without necessarily suggesting that the debtor is entirely free of any personal obligation. For example, a financing entity taking assignments of purchase money security agreements from a seller may well "look to" the purchaser for payment of the money advanced to the seller and to the security interest in the item sold as primary security. It does not necessarily "rely upon" the personal responsibility of the seller, but that is not to say that in recourse financing, the financing entity cannot enforce repayment of the moneys advanced by proceeding against the seller in the event of default. In other words, the phrase "rely upon" may mean no more than that the attorney does not rely *solely* or even *primarily* upon the personal responsibility of the owner.

17. The circuit court in *Elam* went on to say: "[t]he issue [whether an attorney's lien can be created where the client is also personally liable

■ As this court noted in *Elam*, "[t]he trend of the modern decisions ... is to protect the right of the attorney to receive compensation." *Elam, supra* note 5, 598 A.2d at 1170 (quoting *Kellogg v. Winchell,* 51 App. D.C. 17, 19, 273 F. 745, 747 (1921)) (alteration in original). Debts payable by clients to attorneys should in general be subject to the same rules that normally apply to other debtor-creditor relationships. This is not a totally new principle. Over a century ago, the Court of Appeals for the District of Columbia took a similar approach in its opinion in the *Mackall* litigation when it stated that "[t]here is no reason why the agreement [relating to attorneys' fees and the creation of a lien] should not be liberally construed." *Willoughby v. Mackall,* 5 App.D.C. 162, 166 (1895), *aff'd,* 167 U.S. 681, 17 S.Ct. 954, 42 L.Ed. 323 (1897).

■ In sum, we conclude that where an attorney and a client have provided expressly for the creation of a lien to secure the payment of attorneys' fees, as here, such a lien is enforceable in accordance with its terms regardless of any personal liability of the client for payment of such fees. The common law equitable liens such as we found in *Elam* may protect an attorney in the absence of agreement for an express lien; they do not delimit the remedies available to an attorney with respect to compensation.

### B.

■ Midcity also asserts that regardless of the intention of the parties, an attorney may not assert a lien against property that the attorney holds in escrow. No persuasive authority is cited for this proposition, and we see no reason why an express lien should not operate with respect to escrowed funds as effectively as any other property to which a lien may attach, so long as the rights of any other party to the escrow agreement are not adversely affected.

■ No such adverse effects are present here. Since the affirmance of the judgment against him, Dyer clearly has no further rights or interest in the escrowed funds, and WSBA consented to SMC's right to recovery of its attorneys' fees from the proceeds of the successful litigation, which the fund represents. Furthermore, WSBA is in no way challenging SMC's rights in the escrowed funds.

The cases cited by appellant are inapposite and distinguishable. They involved, *inter alia,* requirements for retaining or charging liens arising by operation of law. Indeed, carefully read, several of the cases indirectly support SMC's position. In *Florida Bar v. Bratton,* 413 So.2d 754 (Fla.1982), an attorney asserted a retaining lien in contravention of his duties as trustee for his client, who had entrusted him with the funds at issue for a purpose unrelated to the payment of attorneys' fees. *Id.* at 754–55. The court refused to recognize a retaining lien because the "funds ha[d] been entrusted for a specific purpose and there [wa]s no agreement for payment of fees therefrom." *Id.* at 755. In *Campen v. Talbot Bank of Easton,* 271 Md. 610, 319 A.2d 125 (1974), the asserted retaining lien failed because the funds at issue were held not by the attorney but by a third-party escrow agent. *Id.* 319 A.2d at 129. There was no suggestion by the court that the lien would have been invalid had the attorney himself held the escrowed funds and thereby satisfied the requirement of actual possession. None of the cited cases,[18] even if binding on us, creates a *per se* bar to assertion of an attorneys' lien on funds held in escrow by the attorney, especially where, as here, the terms of the escrow have been fulfilled.

---

for the fees] is of importance not only to members of the District bar, but also to their potential clients, especially indigent ones whose claims are less likely to be brought (or would be brought for a higher fee) if lawyers were put to a choice between a lien and a contract right." *Elam, supra* note 13, 286 U.S.App.D.C. at 400, 918 F.2d at 205. We did not in fact need to decide that issue in *Elam* in order to answer the certified questions.

**18.** Appellant also cites *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.,* 499 F.Supp. 1010 (S.D.N.Y.1980) and *Marsano v. State Bank of Albany,* 27 A.D.2d 411, 279 N.Y.S.2d 817 (App. Div.1967), *appeal dismissed,* 23 N.Y.2d 1018, 299 N.Y.S.2d 458, 247 N.E.2d 286 (1969).

## IV.

Finally, Midcity asserts that in any event, the trial court was obligated to establish the reasonableness of the Retainer Agreement and SMC's charges to WSBA before recognizing SMC's lien. Midcity relies for this proposition solely upon *Falcone v. Hall,* 98 U.S.App.D.C. 363, 235 F.2d 860 (1956). *Falcone* involved two attorneys who had a contingent fee agreement with their client and obtained a judgment in favor of the client in a domestic relations matter. *Id.* at 364, 235 F.2d at 861. The client declined to initiate proceedings to enforce the judgment against certain claimed property of the judgment debtor. *Id.* The attorneys thereupon brought a judgment creditor's bill joining their client and the judgment debtor, among others, as defendants. *Id.* The court held that the attorneys had an equitable lien on the judgment and, in light of the client's failure or refusal to enforce collection on the judgment, the attorneys had the right to seek to enforce the judgment in their own names to the extent necessary to satisfy a valid claim for compensation. *Id.* at 365, 235 F.2d at 862. The court observed that the attorneys quite rightly joined the client as a defendant so that "the [client] may have an opportunity to be heard as to whether the underlying contract was entered into and, if so, whether it was in any way oppressive, unfair, or contrary to public policy." *Id.*

In *Falcone,* then, the attorney was attempting to obtain for himself property from a third party, the judgment debtor, who understandably might feel concern about paying the wrong entity. In the case before us, the attorney is already in possession of the disputed property and resisting a claim against it by a third party. We do not read *Falcone* as a sweeping assertion that whenever an attorneys' fee is involved in a proceeding before a court, a trial court is obligated to inquire into the reasonableness of the fee. Normally, the amount and validity of a debt is a matter between creditor and debtor, which can be challenged only by, or at least with the participation of, the debtor; or through specific procedures such as claims of fraudulent transfers, D.C.Code §§ 28–3101 to –3111 (1996 Repl.), or in bankruptcy proceedings, 11 U.S.C. § 541 (1994). *See Rothberg v. Quadrangle Dev. Corp.,* 646 A.2d 309, 312–13 (D.C.1994) (noting that bankruptcy trustee acquires debtor's cause of action as part of bankruptcy estate), *cert. denied,* —— U.S. ——, 115 S.Ct. 1382, 131 L.Ed.2d 235 (1995). At no time before the trial court did Midcity attempt to implead WSBA or to suggest that WSBA be impleaded on the issue of SMC's claim for attorneys' fees. We see no error in the trial court's rejection on this record of appellant's argument that the trial court must determine the reasonableness of the attorneys' fee arrangement between SMC and its client.

*Affirmed.*