WILLIAM F. MARSANO, Petitioner-Respondent, *v.* STATE BANK OF ALBANY, Respondent, UNITED STATES OF AMERICA, Intervenor-Appellant, and ANTHONY B. CATALDO, Intervenor-Respondent.

Third Department, May 15, 1967.

*Justin J. Mahoney, United States Attorney for the Northern District of New York (Howard M. Koff* of counsel), for intervenor-appellant.

*Anthony B. Cataldo* for intervenor-respondent.

*Arthur J. Harvey* for petitioner-respondent.

*Whelan, McNamee, Creble & Nichols* for respondent.

*William J. Murphy,* trustee for G. O. General Contracting Co., Inc.

GABRIELLI, J. This is an appeal from an order of Special Term directing the disbursement of an account held in trust, which determined that respondent-attorney's charging and retaining liens were superior to appellant's liens for delinquent withholding taxes due by respondent's client.

The issues created herein as to the lien priorities between appellant and respondent are the only ones raised upon this appeal. Petitioner has not asked for a review of the determination by Special Term.

Respondent's client, G. O. General Contracting Co., Inc., (hereinafter referred to as " General ") contracted to perform certain work for Standard Engineering Corp. (hereinafter referred to as " Standard ") which was completed in 1962. In June of 1961, respondent was retained by General to render legal advice and to bring suit for any extra work performed. There is no dispute as to the retainer agreement by which respondent was to receive 50% of any recovery against Standard. Suit was commenced on August 16, 1962 against Standard on behalf of General by respondent, terminating in a settlement. In March of 1962, appellant filed notices of levy upon Standard for General's tax liabilities. It is impossible to determine from the record the exact amount of the tax liabilities and the date from which interest is to be computed.

During the course of the trial of General's suit against Standard, a stipulation settling the action for $25,000 was executed and dictated into the record which, in part, provided that:

" 3. The $25,000 shall be deposited by the defendants in an account bearing interest in the name of William J. Murphy and Anthony Cataldo as trustees for the benefit of the use plaintiff and the defendants as their interest may appear herein and said funds shall be retained in said trustee account until such time as the plaintiff delivers to the defendants a release or discharge of all levies made by the federal government for taxes due and owing from the plaintiff and levied against the defendant, Standard Engineering Co. Upon receipt of such discharge or release the trustees agree to pay said fund, including interest earned, to the use plaintiff and its attorney.

" In the event, however, the use plaintiff delivers to the defendants a letter from the Internal Revenue Department stating the full amount of all federal tax obligations of the use plaintiff to the federal government as of the date of the letter, it is

agreed that the defendants will then pay to the use plaintiff the difference between $25,000 and the amount so stated in the letter, the remaining balance to be held by the defendants until such time as all of the tax obligations set forth in that letter are fully paid and satisfied; provided, however, that in the event the use plaintiff fails to satisfy all of said obligations within a period of two years from date of said letter the defendants shall, at their option, have the right to use the amount so retained in satisfaction of said tax obligations.''

Neither the record nor briefs in any way explain why the full settlement sum of $25,000 was not deposited. The record and briefs furnished leave much to be desired. In any event, it appears that the sum of $8,570.51 was deposited in the State Bank of Albany pursuant to the stipulation, in an account entitled '' William J. Murphy and Anthony B. Cataldo, trustees for the benefit of G. O. General Contracting Co.''

We first address ourselves to respondent's claim that his charging lien under Judiciary Law (§ 475) is superior to appellant's lien for delinquent taxes owing by respondent's client. Section 475 of the Judiciary Law is declarative of the common law and, as stated in *Matter of City of New York (U. S. A.—Coblentz)* (5 N Y 2d 300, 307), the statute essentially creates '' an equitable assignment to the attorney of the fund procured by his efforts to the extent of the amount of his lien '' (citing *Matter of Herlihy,* 274 App. Div. 342). While this pronouncement is followed and regarded as the law relating to attorney's charging liens in the factual situations presented by *Coblentz* and *Herlihy,* the present controversy does not lend itself to such a sweeping declaration. In the case at bar, respondent was a party to the stipulation, having twice signed it as attorney for General and again, as a cotrustee of the fund for the purposes set forth in the stipulation. The stipulation, in part, recited that he received the fund as cotrustee '' for the benefit of the use plaintiff [General] *and* the defendants [Standard] as their interests may appear herein and said funds shall be be retained in said trustee account until such time as the plaintiff delivers '' (italics added) (citing certain conditions which were never met).

By his action and participation in the stipulation of settlement, as well as a signatory thereto, both as attorney for General and as a cotrustee for the fund to be deposited, respondent waived this right to an attorney's charging lien that would be superior to the lien of the Government. He, as cotrustee and attorney, executed the stipulation and received the funds in question with the stated specific conditions attached, all of which

delayed the creation of any possessory or real interest by General in the fund until these stated conditions were met; and, as the court said in *Matter of Hollins* (197 N. Y. 361, 364): " where an attorney receives property for a specific purpose he must carry out that purpose irrespective of any lien which he might have otherwise." (See, also, *West v. Bacon,* 164 N. Y. 425.) By his affirmative act, respondent waived his charging lien to the extent that he subordinated his rights to those of the Government.

We further disagree with Special Term's conclusion that for other services performed by respondent for General, his retaining lien was superior to that of the Government. The deposit of the fund in question in the name of Murphy and Cataldo as " trustees for the benefit of G. O. General Contracting Co." made them mere escrowees. Consequently, Cataldo did not receive possession of the fund in his professional capacity as an attorney with no strings attached. He, along with Murphy, was merely a custodian of the funds in a sense not contemplated by the term " possessor " as employed in retaining lien cases; and as such trustee or escrowee, he is not entitled to a retaining lien superior to that of the appellant (see *Entertainment and Amusements of Ohio v. Barnes,* 49 Misc 2d 316).

We conclude that the lien of the Government has priority over the charging and retaining liens of respondent.

The order should be reversed, on the law and the facts, and the matter remitted to Special Term for further proceedings not inconsistent herewith.

GIBSON, P. J., REYNOLDS, AULISI, STALEY, JR., and GABRIELLI, JJ., concur in opinion per GABRIELLI, J.

Order reversed, on the law and the facts, without costs, and matter remitted to Special Term for further proceedings not inconsistent with the opinion herein.