Michael Catalano, J.
Plaintiff seeks judgment against defendants, Ætna Casualty and Surety Company (-Etna) and State Bank of Kenmore (now merged with Bank of Buffalo— herein called Buffalo) for $25,000, based upon a fire insurance loss occurring on December 11,1965.
*171 The court finds:
During November, 1965, one Allan King, the manager and prospective purchaser of plaintiff’s restaurant, telephoned JEtna, requesting a change of the insured on the policy issued to plaintiff in its corporate name of Lovell’s Ebb Tide Room, Inc. (Lovell), number 15 FP 199561, for a term from December 7, 1962 to December 7, 1967, in the amount of $25,000, covering all restaurant contents. The newly named insured became King’s Ebb Tide Room, Inc. (King), which never purchased the restaurant, so it had no insurable interest in the damaged personal property. Since Lovell. was no longer the named insured, JEtna refused to pay anything to it. Weber and Weston (Weber), attorneys at law, through Charles B. Weston, Jr. (Weston), were retained by Lovell to collect this fire loss claim, upon a retainer of 25% of all sums recovered. Weston negotiated a settlement of $24,000, which JEtna holds pending the determination of Buffalo’s chattel mortgage claim of $18,300, with interest, Weber’s claim of $6,000, and many other claims of general creditors. Weston knew of Buffalo’s mortgage.
Buffalo refused to join in this action as a plaintiff, so it was joined as a defendant.
It was stipulated in open court (and the court so finds):
1 ‘ That the Bank of Buffalo, formerly the State Bank of Kenmore, has a claim against the $24,000 fund held by the JEtna Casualty and Surety Company in the amount of $18,300, with interest from July 31, 1965 at 6% interest, pursuant to a chattel mortgage dated September 30, 1964, in the amount of $3,000, none of which has been paid, and a second chattel mortgage, in the amount of $25,000, with a balance of $15,300, the total owing from Lovell’s Ebb Tide Room, Inc. to the Bank of Buffalo.”
Buffalo was not a party to the retainer agreement between Lovell and Weber.
At common law, the attorney has a general or retaining lien for the entire balance of account for past legal services on all papers, securities or moneys belonging to his client which came into his possession, and a charging lien for services rendered in a particular action or proceeding upon his client’s cause of action; the former lien being dependent upon possession, the latter was created to “save the attorney’s rights where he had been unable to get possession ’ ’. (Matter of Heinsheimer, 214 N. Y. 361, 365; Robinson v. Rogers, 237 N. Y. 467, 470.)
The charging lien has been enlarged by statute. (Robinson v. Rogers, supra, p. 471.)
*172 Section 475 of the Judiciary Law entitled, “Attorney’s lien in action, special or other proceeding,” provides: “From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client’s cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client’s favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien.”
In condemnation, “Where the lands taken are mortgaged, the mortgagee would be entitled to have the award applied upon his mortgage to the extent necessary for his protection, and the remainder would be payable to the owner of the land. The court upon application would adjust the rights of the several claimants of the award according to their legal and equitable interests.” (Gates v. De La Mare, 142 N. Y. 307, 312. Followed in Matter of City of New York [Queens Boulevard], 254 App. Div. 706.)
Where personal property, covered by a chattel mortgage, is destroyed by fire, and the insurer contests the payee of the loss, obligating the owner to retain an attorney to institute an action to recover such loss, which the attorney does successfully, the mortgagee has the prior lien upon the insurance funds, because an attorney’s lien does not take precedence over liens already encumbering the property. Such a lien would only attach to that portion of the insurance fund owned by the client of the attorney. (See United States v. Certain Lands in Town of Highlands, 49 F. Supp. 962, 968.)
The contract of retainer between the property owner and his attorney is personal and has no effect upon the prior lien of the mortgagee who is not a party to that contract (Matter of City of New York [New Utrecht Ave.], 185 App. Div. 55, 57.)
It follows that Buffalo is entitled to $18,300, with 6% interest from July 31,1965, Weber is entitled to 25% of $24,000 or $6,000, in that order of priority. Since no funds will be remaining after said payments are made, the other third-party defendants will have nothing upon which to base a claim.
Judgment in favor of Buffalo and Weber against ¿Etna is granted accordingly.