**UNITED STATES of America, Plaintiff,**

**v.**

**J.H.W. & GITLITZ DELI & BAR, INC., Israel W. Tannenbaum, and New York State Tax Commission, Defendants.**

**79 Civ. 7000.**

United States District Court, S. D. New York.

Oct. 8, 1980.

---

John S. Martin, Jr., U. S. Atty., S. D. N. Y., New York City, for plaintiff; Harvey J. Wolkoff, Asst. U. S. Atty., New York City, of counsel.

Israel W. Tannenbaum, pro se.

Robert Abrams, Atty. Gen. of N. Y., New York City, for defendant New York State Tax Commission; Kenneth A. Thomas, Asst. Atty. Gen., New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

The issue presented by this action is the priority of payment of funds in an account held by an attorney, the defendant Israel W. Tannenbaum ("Tannenbaum"), as escrow agent for the defendant J.H.W. & Gitlitz Deli & Bar, Inc. ("Gitlitz") in the amount of $12,380.37. Plaintiff, the United States of America, commenced this action to recover unpaid federal withholding and unemployment taxes from Gitlitz and to foreclose federal tax liens on the escrow account.[1] Tannenbaum contends he is entitled to priority for unpaid fees for legal services rendered Gitlitz, out–of–pocket expenditures and disbursements, and escrow fees. The New York State Tax Commission ("Commission"), also named as a defendant, seeks to obtain payment of its lien for unpaid sales and franchise taxes owed to the State by Gitlitz.[2] The essential facts have been stipulated and the parties agree that the matter is ripe for summary judgment.

### I. The Facts

Gitlitz owned a restaurant and bar at 157 East 57th Street, New York City that was closed prior to March 1, 1975. Commencing about that date Tannenbaum rendered services in connection with the sale of the furniture and fixtures and the reopening of the restaurant. Additional services were rendered thereafter, when the purchasers defaulted in payments due under the sales agreement, in the repossession of the furniture and fixtures pursuant to the New York Uniform Commercial Code and the subsequent resale of the restaurant. Tannenbaum also negotiated with the landlord of the premises, the Internal Revenue Service ("IRS") and the Commission to ensure that the restaurant's assets remained in place pending its reopening. He also defended

---

1. The United States has obtained a default judgment in this action against Gitlitz in the amount of $15,972.43 plus interest. It has not, however, collected any monies on this judgment.

2. The Commission has secured a default judgment against Gitlitz in the sum of $26,621.63 plus interest, which remains unpaid.

Gitlitz in three actions brought against it by trustees of union welfare funds on behalf of employees of the restaurant. Under the agreements for the sales of the restaurant Tannenbaum, as escrow agent for Gitlitz, received $12,380.37, the subject matter of this action. Tannenbaum asserts that the fair and reasonable value of his legal services is $4,750, of his services as escrow agent is $830, and of his expenses and disbursements is $455, a total of $6,008. He claims a lien in this amount on the fund in his possession which is entitled to priority over the liens of the United States Government and the State of New York.

Before and during the period in question, the IRS made the following assessments, including interest and penalties, against Gitlitz:

| Taxable Period | Assessment Date | Total |
|---|---|---|
| 6/30/74 | 9/ 9/74 | $3,122.31 |
| 9/30/74 | 12/ 9/74 | 4,705.00 |
| 3/31/75 | 5/19/75 | 3,585.05 |
| 12/31/74 | 6/26/75 | 5,563.54 |
| 12/31/74 | 6/26/75 | 441.19 |

In addition, the Commission docketed six warrants against Gitlitz for unpaid sales and franchise taxes as follows:

| Date Docketed | Amount of Warrant |
|---|---|
| June 4, 1975 | $ 134.86 |
| June 12, 1975 | 3,586.65 |
| July 31, 1975 | 2,654.67 |
| October 3, 1975 | 2,653.57 |
| March 29, 1976 | 849.23 |
| September 21, 1976 | 8,303.61 |

The United States and the Commission assert liens on the fund held by Tannenbaum in the amount of their respective tax assessments. They agree that as between them, the first three assessments made by the IRS on September 9, 1974, December 9, 1974, and May 19, 1975 in the total amount of $11,412.36, including interest and penalties through June 30, 1980, are prior to any liens of the Commission. As to the Commission liens, the United States concedes

that they are prior to the United States' subsequent liens in sufficient amount to exhaust the balance of the available funds. The remaining issue to be determined is the priority, if any, to be accorded Tannenbaum's claimed liens in relation to those of the United States and the Commission.

## II. Lien Priorities Between the United States and Tannenbaum

■ A federal tax lien takes priority over a competing lien unless the competing lien either falls within one of the statutory priorities set forth in the Internal Revenue Code or is a valid state–created lien that became choate prior to the perfection of the federal tax lien.[3] Tannenbaum's lien must fall within one of these two exceptions to overcome the usual federal tax lien priority. The Court finds that neither exception sustains Tannenbaum's claims.

### A. The Priority Statute

Of the priorities established by section 6323(b) of Title 26 of the United States Code, the sole one arguably applicable to Tannenbaum's claims is section (b)(8), which provides in pertinent part as follows:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid ... with respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforcible against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement.

By its terms section 6323(b)(8) affords priority status to the lien of an attorney for the reasonable value of his services if those services were incurred in securing a judgment or settling a claim.[4] The section looks

---

3. *United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1953); *MDC Leasing Corp. v. New York Ins. Underwriting Ass'n*, 450 F.Supp. 179, 181 (S.D.N.Y.1978), aff'd mem., 603 F.2d 213 (2d Cir. 1979).

4. E. g., *United States v. State Nat'l Bank of Conn.*, 421 F.2d 519, 521 (2d Cir. 1970).

to local law to define the extent of this entitlement.[5]

Under New York law, the lien of an attorney for his services in securing a judgment or settlement is governed by section 475 of the Judiciary Law, which codifies the common law "charging lien."[6] Section 475 provides:

From the commencement of an action, special or other proceeding in any court or before any state, municipal or federal department, except a department of labor, or the service of an answer containing a counterclaim, the attorney who appears for a party has a lien upon his client's cause of action, claim or counterclaim, which attaches to a verdict, report, determination, decision, judgment or final order in his client's favor, and the proceeds thereof in whatever hands they may come; and the lien cannot be affected by any settlement between the parties before or after judgment, final order or determination. The court upon the petition of the client or attorney may determine and enforce the lien. (Emphasis supplied.)

New York courts have held that an attorney is not entitled to the benefits of section 475 unless he has commenced an action or asserted a counterclaim on behalf of his client.[7] None of the services provided by Tannenbaum meet this requirement. On the contrary, the bulk of his services consisted of negotiations with creditors and prospective purchasers of the restaurant so as to permit its reopening and continued operation–services of the type that commonly are performed by real estate agents or brokers. There were, of course, legal services rendered in the drafting of documents when such negotiations were consummated.

The only compensation Tannenbaum claims based on an appearance before a judicial tribunal is that stemming from his defense of three lawsuits brought against Gitlitz. New York law is clear, however, that the representation of a defendant in resisting a claim against him does not invoke the protection of an attorney's lien under section 475 unless a counterclaim is asserted. The essence of the right to a charging lien in the attorney's favor is the creation of a fund or proceeds out of which he is paid.[8] In the three actions brought by the trustees of pension funds to recover benefits due employees of the restaurant, Tannenbaum neither represented Gitlitz as a plaintiff nor asserted a counterclaim while representing Gitlitz as a defendant. Tannenbaum's litigation services on behalf of Gitlitz thus fail to qualify for a lien under section 475.

Tannenbaum argues that his taking possession of the furniture and fixtures under sections 9–503 and 9–504 of the New York Uniform Commercial Code, which authorize a self–help remedy in lieu of litigation, should be treated as if he had brought suit to recover these items before a judicial tribunal. The public policy favoring nonjudicial resolution of conflicts might justify this treatment.[9] However, this flexible treatment of the judicial proceeding re-

---

5. 26 U.S.C. § 6323(b)(8); see U.S. Code Cong. & Ad.News 1966, pp. 3722, 3727 (89th Cong.2d Sess. 1966).

6. Regan v. Marco M. Frisone, Inc., 54 A.D.2d 1125, 388 N.Y.S.2d 798, 799 (1976).

7. See, e. g., Cox v. Scott, 10 A.D.2d 32, 197 N.Y.S.2d 60, 62–63 (1960) (no charging lien under section 475 for attorney's search for funds left by client's wife); Spinello v. Spinello, 70 Misc.2d 521, 334 N.Y.S.2d 70, 77–78 (Sup. Ct.1972) (fee covered by attorney's charging lien is only for services rendered in connection with an action, special or other proceeding); Avalon Fabrics, Inc. v. Raymill Fabric Corp., 96 N.Y.S.2d 50, 53 (Sup.Ct.1950) (arbitration not "proceeding" under section 475 until some related application made to Supreme Court).

8. United States v. Clinton, 260 F.Supp. 84, 90 (S.D.N.Y.1966); Desmond v. Socha, 38 A.D.2d 22, 327 N.Y.S.2d 178, 180 (1971), aff'd, 31 N.Y.2d 687, 337 N.Y.S.2d 261 (1972) (no charging lien under section 475 when attorney only defended an interest and his services neither created a fund or proceeds out of which he sought payment); Spinello v. Spinello, 70 Misc.2d 521, 334 N.Y.S.2d 70, 76 (Sup.Ct.1972).

9. See, e. g., Carcich v. Rederi a/b/a Nordie, 389 F.2d 692, 696 (2d Cir. 1968) (arbitration).

quirements of section 475 has been implicitly rejected by the New York courts, which have held that the nonjudicial dispute–resolving mechanism of arbitration is not a "proceeding" under section 475 until some related application is made to a court.[10] Even more to the point is a holding by the New York State Court of Appeals that a lawyer is not entitled to a charging lien when he only defended a title or interest already held by the client and did not create a fund.[11] Tannenbaum's action in repossessing the fixtures and property without a lawsuit returned to Gitlitz items he already owned by reason of the purchaser's default and clearly did not create a fund to which a lien could attach.

Since the legal services rendered by Tannenbaum do not qualify for a charging lien under section 475 of the New York Judiciary Law, he is not entitled to the priority established by section 6323(b)(8) of Title 26 of the United States Code.

### B. *Priority in Time*

Even if Tannenbaum does not qualify for the priority of section 6323(b)(8) because he is not entitled to a charging lien, he may prevail over a federal tax lien if he possesses a valid attorney's lien under New York law that was choate, or perfected,

prior in time to the assessment of the tax.[12] The only other attorney's lien that Tannenbaum could claim under New York law is a common law retaining lien.

An attorney holds a retaining lien under New York law for the entire account owed him by a particular client on all money, papers, and property of that client coming into his possession in the course of his professional employment.[13] Although Tannenbaum could have had a retaining lien for the reasonable value of the general legal services he performed for Gitlitz if he held Gitlitz's funds in his capacity as an attorney, a retaining lien does not attach to funds that are merely deposited with an attorney in escrow for payment to others, unless the escrow agreement specifically authorizes payment of the attorney's legal fees out of the escrow fund.[14] The agreement under which Tannenbaum received the funds provides that all payments were to be held in escrow by Tannenbaum for payment without interest to Gitlitz. Tannenbaum did not receive the funds in his capacity as an attorney; they were received by him in his role as escrow agent. Absent specific authorization to draw upon the funds for the payment of legal services claimed to be due him, he was not entitled to a retaining lien on the fund.[15]

---

10. See *Spinello v. Spinello*, 70 Misc.2d 521, 334 N.Y.S.2d 70, 75 (Sup.Ct.1972); *Avalon Fabrics, Inc. v. Raymill Fabric Corp.*, 96 N.Y.S.2d 50, 53 (Sup.Ct.1950).

11. *Ekelman v. Marano*, 251 N.Y. 173, 167 N.E. 211 (1929).

12. *United States v. City of New Britain*, 347 U.S. 81, 85, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1953); *United States v. Fidelity Philadelphia Trust Co.*, 459 F.2d 771, 773–74 (3d Cir. 1972); *MDC Leasing Corp. v. New York Ins. Underwriting Ass'n*, 450 F.Supp. 179, 181 (S.D.N.Y. 1978), aff'd mem., 603 F.2d 213 (2d Cir. 1979); *Corigliano v. Catla Construction Co.*, 231 F.Supp. 245, 248 (S.D.N.Y.1964).

13. *Matter of Heinsheimer*, 214 N.Y. 361, 364–65, 108 N.E. 636 (1915); *Lovell's Ebb Tide Room, Inc. v. Aetna Cas. & Sur. Co.*, 56 Misc.2d 170, 288 N.Y.S.2d 425, 427 (Sup.Ct.1968); *Entertainment & Amusements of Ohio, Inc. v. Barnes*, 49 Misc.2d 316, 267 N.Y.S.2d 359, 362 (Sup.Ct.1966).

14. *Entertainment & Amusements of Ohio, Inc. v. Barnes*, 49 Misc.2d 316, 267 N.Y.S.2d 359, 362–63 (Sup.Ct.1966); *City of New York v. Avenue U Service Center, Inc.*, 5 Misc.2d 795, 141 N.Y.S.2d 584, 585 (Sup.Ct.1955).

15. Even if Tannenbaum held a charging or retaining lien in the fund, the United States would clearly be entitled to payment of its first two assessments, made on September 9, 1974 and December 9, 1974 and totalling $7,827.31. The relative priority of federal tax liens and state–created liens is governed by the common law rule "first in time is the first in right"; the lien that first becomes choate is entitled to priority. *United States v. Pioneer Amer. Ins. Co.*, 374 U.S. 84, 87, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963); *United States v. City of New Britain*, 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954); *United States v. Clinton*, 260 F.Supp. 84, 89 (S.D.N.Y.1966). A federal tax lien becomes choate on the date of assessment. 26 U.S.C. § 6322; *see United States v. Russell*, 532 F.2d 175, 177 (10th Cir. 1976); *United States v. Fidelity Philadelphia Trust Co.*,

■ Finally, Tannenbaum is not entitled to payment of fees for performing services as an escrow. agent independent of his status as an attorney. Under New York law, an escrow agent has no lien on the escrow fund to compensate him for services rendered.[16] He is bound strictly by the terms of the escrow agreement.[17] Because the escrow agreement under which Tannenbaum held the fund provided only for payment to Gitlitz, Tannenbaum has no right to draw upon the fund to compensate him for his escrow services.[18]

■ Without the benefit of a state lien, Tannenbaum's claims are reduced to the status of those of a general creditor and thus are not entitled to priority over the federal tax liens.

### III. Lien Priorities Between Tannenbaum and the Commission

In light of the stipulation between the United States and the Commission, the sole remaining issue is the appropriate disposition of the $968.01 that is left in the escrow fund after the United States recovers its first three tax assessments.

Under section 1141(b) of the New York Tax Law, the Commission is entitled to a lien on the real and personal property of Gitlitz, including the escrow fund, once a warrant for unpaid sales and franchise taxes is docketed with the County Clerk. The

Commission thus perfected liens in the escrow fund on June 4, 1975 and June 12, 1975, when it docketed warrants against Gitlitz. These liens exhaust the balance of the fund.

■ Tannenbaum, on the other hand, under the foregoing analysis, possesses no prior charging lien, retaining lien, or lien as an escrow agent. The liens of the Commission thus prevail as to the remaining $968.01.

So ordered.

---

459 F.2d 771, 773 (3d Cir. 1972); *Stuyvesant Ins. Co. v. Dep't of Treasury,* 378 F.Supp. 7, 11 (S.D.N.Y.1974). Under federal law, however, a state–created lien is not perfected until "there is nothing more to be done to have a choate lien–when the identity of the lienor, the property subject to the lien, and the amount of the lien are established." *United States v. Vermont,* 377 U.S. 351, 358, 84 S.Ct. 1267, 1271, 12 L.Ed.2d 370 (1964); *United States v. Pioneer Amer. Ins. Co.,* 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963); *United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954); *United States v. Fidelity Philadelphia Trust Co.,* 459 F.2d 771, 773 (3d Cir. 1972); *United States v. Clinton,* 260 F.Supp. 84, 89 (S.D.N.Y.1966). Tannenbaum was not retained by Gitlitz until March 1, 1975. His liens thus could not have become choate under the federal test until well after the liens based on the first two tax assessments were perfected. Thus, in any event, the United

States prevails as to these assessments under the "first in time" rule regardless of Tannenbaum's later success in asserting a lien.

16. *Marsano v. State Bank of Albany,* 27 A.D.2d 411, 279 N.Y.S.2d 817, 820 (Sup.Ct.1967); *Entertainment & Amusements of Ohio, Inc. v. Barnes,* 49 Misc.2d 316, 267 N.Y.S.2d 359, 363 (Sup.Ct.1966).

17. *Marsano v. State Bank of Albany,* 27 A.D.2d 411, 279 N.Y.S.2d 817, 820 (Sup.Ct.1967); *Entertainment & Amusements of Ohio, Inc. v. Barnes,* 49 Misc.2d 316, 267 N.Y.S.2d 359, 363 (Sup.Ct.1966).

18. *Marsano v. State Bank of Albany,* 27 A.D.2d 411, 279 N.Y.S.2d 817, 820 (Sup.Ct.1967); *Entertainment & Amusements of Ohio, Inc. v. Barnes,* 49 Misc.2d 316, 267 N.Y.S.2d 359, 363 (Sup.Ct.1966).