**Micheline LERNER, Plaintiff,**

v.

**UNITED STATES of America, Viking Penguin, Inc., Nina Bushkin Lerner, and Alan J. Lerner, Defendants.**

**No. 85 Civ. 6091 (CHT).**

United States District Court,
S.D. New York.

June 4, 1986.

Raoul Felder & Lerner, New York City, for plaintiff Micheline Lerner; Myrna Felder, of counsel.

Rudolph W. Giuliani, U.S. Atty. for S.D. N.Y., New York City, for the Government; Jordan Stanzler, of counsel.

Frankfurt, Garbus, Klein & Selz, P.C., New York City, for defendant Viking Penguin, Inc.; Gerald E. Singleton, of counsel.

Cohen, Grossberg & Zinkin, New York City, for defendant Alan Jay Lerner; Davis Grossberg, of counsel.

## OPINION

TENNEY, District Judge.

This is an interpleader action brought by the plaintiff, Micheline Lerner, in order to determine the rights of the various parties to ownership of a fund she has collected. The matter concerns conflicting claims of priority between the plaintiff and the defendants other than Alan Jay Lerner. Two of the defendants, Viking Penguin, Inc. ("Viking") and the United States of America ("Government"), now move for summary judgment. For the reasons set forth below, summary judgment is granted in favor of Viking and the Government.

## BACKGROUND

In 1965, Micheline Lerner obtained a divorce decree from Alan Jay Lerner in a Nevada court. The decree required Mr. Lerner to pay $4,166.66 in alimony to Ms. Lerner every month. In 1979, after Mr. Lerner had defaulted on his alimony payments, Ms. Lerner instituted an action against him in the Supreme Court of the State of New York. In addition to entering a money judgment against Mr. Lerner for prior alimony payments, the court appointed Ms. Lerner as the receiver and sequestrator of all of assets belonging to Mr. Lerner which are located in New York. The court authorized Ms. Lerner to distribute to herself "all sums of arrears already fixed under the parties' divorce decree as well as current and future support under such decree as it becomes due."

Mr. Lerner holds a number of copyrights, and two New York organizations collect royalties on his behalf. The fund at issue here consists primarily of royalties which were turned over to Ms. Lerner pursuant to the terms of the 1979 order. At the end of 1985, there was approximately $135,000 in the fund, and it was Mr. Lerner's principal New York asset. Three of the parties to this action—Ms. Lerner, the Government, and Viking—claim that they are entitled to payment from the fund, and that their claim has priority.[1]

It is undisputed, at least for the purposes of this case, that Mr. Lerner owes money to each of these claimants. As of January 1, 1986, he owed Ms. Lerner approximately $72,000 for alimony which he failed to pay between September 1, 1984 and January 1, 1986. He also owes Viking approximately $75,000, pursuant to a judgment which Viking obtained in 1979. The Internal Revenue Service ("IRS") has determined that he owes the Government over $1,000,000 in federal income taxes for the years 1977,

1980, and 1981. Obviously, not all of these claims can be satisfied from the fund at issue here, and therefore it is necessary to determine whose interest has priority.

## DISCUSSION

A federal tax lien generally takes priority over a competing lien. *See* 26 U.S.C. § 6321 *et seq.* A valid state-created lien, however, has priority if it became choate prior to the perfection of the federal tax lien. *See United States v. City of New Britain*, 347 U.S. 81, 74 S.Ct. 367, 98 L.Ed. 520 (1953); *United States v. J.H.W. & Gitlitz Deli & Bar, Inc.*, 499 F.Supp. 1010, 1013 (S.D.N.Y.1980); *MDC Leasing Corp. v. New York Ins. Underwriting Ass'n*, 450 F.Supp. 179, 181 (S.D.N.Y.1978), *aff'd mem.*, 603 F.2d 213 (2d Cir.1979). In this instance, Ms. Lerner and Viking both claim that they have a state-created lien, arising from the judgments that they obtained against Mr. Lerner, and that their state-created liens take priority over the Government's tax lien. The Court concludes that Viking's claim overcomes the Government's priority, but that Ms. Lerner's does not.

### 1. *Viking's Claim*

■ The question of whether a federal tax lien has priority over a lien created under state law is governed by the common law rule—the first in time is the first in right. *See United States v. City of New Britain*, 347 U.S. at 85–87, 74 S.Ct. at 370. In the case at bar, Viking obtained a judgment against Mr. Lerner in 1979. Viking perfected the judgment on June 5, 1981 by delivering a judgment execution to the sheriff. *See* N.Y.C.P.L.R. § 5202(a) (McKinney 1978). The federal tax lien was not recorded until after Viking had perfected its judgment. Therefore, Viking's lien

1. Nina Bushkin Lerner, who was married to Mr. Lerner at least during the period 1977–1981 (Plaintiff's Brief, p. 5), has not filed an entry of appearance in the case. She obtained a judgment against Mr. Lerner for $67,607 in 1985, but she has not asserted that she has any priority to the fund at issue here.

Although Mr. Lerner has appeared in the action, he has not asserted any claim against the fund. He merely urges the Court to award the money to the plaintiff, rather than the Government, and he reserves the right to reopen the issue of how much alimony should be paid to the plaintiff.

has priority over the federal tax lien at issue.[2]

### 2. *Micheline Lerner's Claim*

The "first in time, first in right" rule hinges upon whether the state-created lien was choate prior to the time that the federal tax lien arose. *See United States v. City of New Britain*, 347 U.S. at 84, 74 S.Ct. at 370; *Asher v. United States*, 570 F.2d 682, 683 (7th Cir.1978); *J.H.W. & Gitlitz Deli*, 499 F.Supp. at 1013. In this instance, Ms. Lerner's claim for alimony only concerns payments for 1984 and 1985, and Ms. Lerner did not have a choate lien for such payments at the time that the relevant tax assessments were made against Mr. Lerner between 1981 and 1984.[3]

Ms. Lerner argues that the 1979 order,[4] which gave her the right to attach Mr. Lerner's New York property, created a lien that was choate as of 1979. In order for a lien to be choate, however, three factors must be satisfied: (1) the identity of the lienor must be known; (2) the property subject to the lien must be identified; and (3) the amount of the lien must be established. *See United States v. Equitable Life Assurance Society*, 384 U.S. 323, 327–28, 86 S.Ct. 1561, 1564, 16 L.Ed.2d 593 (1966); *United States v. Pioneer American Ins. Co.*, 374 U.S. 84, 89, 83 S.Ct. 1651, 1655, 10 L.Ed.2d 770 (1963); W. Plumb, *Federal Tax Liens* 149–50 (3d Ed. 1972 and Supp.1974). In the case at bar, the third factor—which requires that the amount of the lien be established—was not satisfied.

Under the 1979 order, Ms. Lerner had the right to attach Mr. Lerner's New York assets to satisfy any alimony payments that Mr. Lerner failed to make. Ms. Lerner's right to attach the specified property, however, was contingent upon a future event—that is, Mr. Lerner's failing to make the requisite alimony payments. If the alimony was paid, then Ms. Lerner could not assert any claim against Mr. Lerner's assets.

As one court explained, a "lien remains inchoate until the underlying debt becomes due." *Sgro v. United States*, 609 F.2d 1259, 1261 (7th Cir.1979). Ms. Lerner's claim for 1984–1985 alimony payments was not choate at the time that the federal tax lien arose, since the amount owed to Ms. Lerner for 1984–1985 could not be determined until Mr. Lerner actually defaulted. Thus, Ms. Lerner did not have a lien based on 1984 payments until 1984, when the debt accrued. *See United States v. Waddill, Holland & Flinn, Inc.*, 323 U.S. 353, 359, 65 S.Ct. 304, 305, 89 L.Ed. 294 (1945) (Landlord's lien upon future installments of rent was held to be inchoate.). When the taxes were assessed, it was still uncertain whether or not Mr. Lerner would pay the alimony owed to Ms. Lerner. The fact that he had previously defaulted on his payments, does not create the legal certainty required to create a choate lien.

In an analogous situation, courts have held that a federal tax lien takes priority over a security interest in accounts receivable, because the security interest is not choate until such time as the underlying amount becomes certain. *See J.D. Court, Inc. v. United States*, 712 F.2d 258, 262 (7th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1708, 80 L.Ed.2d 182 (1984); *Texas Oil & Gas Corp. v. United States*, 466 F.2d 1040, 1045 (5th Cir.1972), *cert. denied sub nom. Pecos County State Bank v. United States*, 410 U.S. 929, 93 S.Ct. 1367, 35 L.Ed.2d 591 (1973); *see also Rice Inventory Co. v. United States*, 625 F.2d 565, 572–73 (5th Cir.1980) ("[A] security interest

---

**2.** The Government concedes that Viking's lien has priority over the federal tax lien.

**3.** The Government also argues that the 1979 order issued by the court was not a "judgment." The Government argues that it was merely a "sequestration order," and that it could not be perfected. There is no need to reach this issue,

however, since the Court finds that even if the plaintiff had a judgment, it was not perfected since it was not choate.

**4.** In general, a federal tax lien arises—i.e. attaches—at the time that the assessment is made. *See* 26 U.S.C. § 6322.

... in inventory not yet acquired at the time of the filing of the tax lien cannot be considered choate[.]"). In the case at bar, the underlying debt owed to Ms. Lerner by Mr. Lerner did not become due until 1984, several years after the government made its tax assessment. Thus, the Government's claim has priority over Ms. Lerner's claim.

### 3. Viking's Priority Over Ms. Lerner

■ Ms. Lerner argues that her claim is entitled to priority over Viking's based on a state court order dated November 1, 1981. That dispute involved Micheline Lerner and Karen Lerner who is also a former wife of Mr. Lerner. In the 1981 case, Micheline Lerner argued that her claims against Mr. Lerner had priority over Karen Lerner's claims because of the 1979 court order which gave her the right to sequester and distribute Mr. Lerner's New York assets. The court agreed, and stated that "Micheline Lerner has first priority followed by Karen Lerner."

That decision, however, has no application to the present controversy. It merely established Micheline Lerner's priority over Karen Lerner. There is no merit to Micheline Lerner's argument that the 1981 order gave her priority in terms of all claims against Mr. Lerner that might arise before or after the date of that decision. There is no indication that the court intended to make such a sweeping pronouncement, and this Court will not give the 1981 order such a broad reading.

In the instant action, Ms. Lerner's claim only concerns alimony payments for 1984 and 1985. Viking's judgment was perfected in 1981, and, as discussed above, Ms. Lerner's right to the alimony payments at issue did not accrue until 1984. Since Vi-

king's claim was first in time to arise and to be perfected, Viking's claim has priority over Ms. Lerner's. Thus, Viking has priority over both the Government and Ms. Lerner. Viking is entitled to recover $50,-103.71 from the fund, together with 9% interest from September 14, 1979.[5]

In sum, Viking has priority as against all claimants and is entitled to collect its full judgment, together with 9% interest from the date of judgment.[6] The Government has priority over Micheline Lerner, and is entitled to the remainder of the fund, to be applied towards satisfying Mr. Lerner's tax debts.[7] The plaintiff's request for costs and attorneys' fees is denied. Counsel for the parties are directed to submit judgment within 30 days.

So ordered.

---

5. The parties stipulated to the amount of interest owed to Viking as of December 25, 1985, and that interest "continues to accrue at the rate of 9%." *See* Statement of Stipulated Facts, ¶ 4.

6. Interest is to be calculated in the manner agreed on by the parties in the Statement of Stipulated Facts.

7. Since Nina Bushkin Lerner did not obtain a judgment against Mr. Lerner until June 10,

1985, both Viking and the Government have priority over her for the reasons set forth in the discussion. Micheline Lerner has priority at least for all alimony that accrued prior to June 10, 1985. The order of priority after that date need not be discussed in this opinion, since the fund at issue is not sufficient to satisfy all claims.