**AMERICAN EXPRESS TRAVEL RE-LATED, SERVICES COMPANY, INC., Plaintiff,**

v.

**KALISH & RICE, INC., J. Roger Faherty and Regent Air Corp., Defendants,**

and

**United States of America, Intervenor-Defendant.**

**No. 86 Civ. 4034 (KTD).**

United States District Court, S.D. New York.

June 13, 1988.

Hahn & Hessen, New York City, for plaintiff; Robin E. Eichen, Judith Rinearson, of counsel.

Galland, Kharasch, Morse & Garfinkle, P.C., Washington, D.C. (Robert H. Morse, Andrew B. Sacks, of counsel), Callan, Regenstreich & Koster, Brooklyn Heights, N.Y., (Bruce Regenstreich, of counsel), for defendant Kalish & Rice, Inc.

Richard P. Caro, New York City, for defendant Regent Air Corp.

Patrick J. Monaghan, Jr., New York City, for J. Roger Faherty.

Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, for U.S.; Cynthia Keeffe Dunne, Asst. U.S. Atty., of counsel.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

American Express Travel Related Services Company, Inc. ("American Express") initiated this interpleader action against Kalish & Rice, Inc. ("K & R"), J. Roger Faherty ("Faherty") and Regent Air Corporation ("Regent") to determine the appropriate payee of funds held in an account for Regent. The United States of America (the "United States") intervened and asserted the priority of its tax liens against Regent. Each party now moves for summary judgment pursuant to Fed.R.Civ.P. 56 as follows: K & R moves against all other parties; Faherty opposes K & R's motion and cross moves against K & R only; the United States opposes K & R's motion and cross moves against K & R only.[1] For the following reasons, K & R's motion against the United States is granted and the United States' motion is denied. The cross-motions regarding the priority between K & R and Faherty will be decided after a hearing pursuant to Fed.R.Civ.P. 43(e).

## FACTS

This action arises out of the collapse of Regent, a public corporation incorporated in 1983 under the laws of Delaware, with its principal offices in California. The following facts regarding that collapse and its consequences are not in dispute.

Faherty became a corporate director and stockholder of Regent in 1983. He became the majority stockholder, chairman and chief executive officer of Regent in 1984. Also in 1984, in response to Regent's ongoing financial difficulties and upon approval of two members of Regent's board of directors, Faherty made several substantial loans to Regent. The loans were secured by various assets of Regent including accounts receivable, trademarks, licenses and operating equipment. A UCC financing statement for each loan was filed in California between December 1984 and June 1985.

Beginning in 1984 K & R performed advertising and marketing services for Regent. After several months, K & R and Regent entered into an arrangement whereby K & R would submit cost estimates of all work, Regent would approve

---

1. Regent has submitted two declarations by its attorney, Richard P. Caro, in opposition to K & R's motion for summary judgment but makes no cross motions.

the work and K & R would then perform the work on a credit basis. When Regent failed to make payments under this agreement K & R brought suit in this court and won a judgment on November 12, 1985. *Kalish & Rice v. Regent Air*, 85 Civ. 3600 (RWS).

On January 13, 1986 the Clerk of the Court for the Southern District of New York issued a writ of execution with respect to the K & R judgment. On January 17, 1986, the United States Marshal served the writ on American Express but did not seize money from Regent's account because American Express, having been notified that Faherty and Regent were asserting competing claims to the monies in the account, wished to avoid exposure to multiple liability and refused to satisfy the writ. The Marshal returned the writ "unsatisfied." American Express segregated and froze the funds referred to in the served execution, instituted this action, and deposited the funds into court in May 1986.

In September 1986 the Internal Revenue Service filed notices of its tax lien against Regent for unpaid excise taxes assessed in July and October 1985 and in February 1986. The United States was permitted by this court to intervene in this action and now asserts priority over K & R to the disputed funds.[2]

## DISCUSSION

### A. The Federal Tax Liens

■ The priority of a tax lien is a matter of federal law. A tax lien arises in favor of the United States at the time an assessment of tax liability is made and the tax lien generally takes priority over a competing lien. *See* 26 U.S.C. §§ 6321, 6322 (1982). However, under the common law rule that first in time is first in right, "[a] valid state-created lien, ... has priority if it became choate prior to the perfection of the federal tax lien." *Lerner v. United States*, 637 F.Supp. 679, 680 (S.D.N.Y.1986) (citations omitted); *see also* 26 U.S.C. § 6323(a) (1982). A state-created lien be-

comes choate when three factors are satisfied: "(1) the identity of the lienor must be known; (2) the property subject to the lien must be identified; and (3) the amount of the lien must be established." *Lerner*, 637 F.Supp. at 681 (citations omitted).

In the case at bar, the government's tax liens were not perfected until their filing in September 1986. K & R's lien was choate in January 1986 when the judgment execution was delivered to the Marshal. *See* N.Y.Civ.Prac.L. & R. § 5202(a) (McKinney 1978); *Knapp v. McFarland*, 462 F.2d 935, 938 (2d Cir.1972); *Lerner*, 637 F.Supp. at 680. *See also International Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121, 122, 365 N.Y.S.2d 808, 809, 325 N.E.2d 137, 138 (1975) ("judgment creditor also obtains a priority by issuance to the Sheriff of a property execution upon which no return has yet been made"). At the time the execution was delivered to the Marshal, K & R's lien was choate; K & R was identified as the lienor, Regent's account at American Express was identified as the property subject to the lien, and the amount of the lien was clearly established on the judgment and on the writ served on American Express by the Marshal. At the latest, K & R's lien became choate when American Express instituted this interpleader action in May 1976 and deposited the funds into court.

The United States' argument that the return of the writ as "unsatisfied" prevented the perfection of the judgment lien is misplaced. New York law allows a judgment creditor 90 days to take additional steps to "perfect" his lien if the garnishee does not deliver the property upon service of a writ. N.Y.Civ.Prac.L. & R. § 5232 (McKinney 1978). In this case, however, before K & R's 90 days expired, American Express' filing of this action extended the effect of the levy. K & R's lien was therefore choate within the meaning of federal law and it need do no more. *See United States v. Vermont*, 377 U.S. 351, 358, 84 S.Ct. 1267, 1271, 12 L.Ed.2d 370 (1964);

**2.** The United States argues only that its rights are superior to K & R. It does not address its priorities relative to Faherty but attempts to reserve its rights to do so should Faherty invalidate K & R's claim.

*United States v. City of New Britain,* 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954).

In sum, because K & R's lien was choate prior to the perfection of the tax liens, its claim on Regent's American Express account has priority over the United States.

**B. Faherty's Secured Loans**

■ The validity of Faherty's security interest in Regent's assets depends on the validity of the loan agreement between Faherty and Regent. Faherty, as both director and controlling stockholder of Regent, is a fiduciary. As such, his

> dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein. The essence of the test is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain.

*Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) (citations and footnote omitted).

K & R claims that the Faherty's UCC filing is void because the loan is not the result of an arms length bargain. Rather, K & R argues that the loan is either the result of an invalid exercise of power by Regent's board of directors, or, if the corporate veil is pierced, a contribution to capital.

These arguments, in light of the rule in *Pepper v. Litton* quoted above, raise material questions of fact which cannot be resolved on the papers submitted by the parties. However, a trial is not necessary at this time because the issues are amenable to resolution through the summary hearing procedure provided by Fed.R.Civ.P. 43(e). Such a hearing provides the court with the opportunity to " 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial.' [The purpose of the hearing is] to assay the alleged probative evidence of the plaintiffs in order to narrow the controverted issues to triable matters and to dispose of matters unsupported by admissible evidence." *Argus, Inc. v. Eastman Kodak Co.,* 612 F.Supp. 904, 908 (S.D.N.Y.1985) (footnote omitted), *aff'd,* 801 F.2d 38 (2d Cir.1986), *cert. denied,* 479 U.S. 1088, 107 S.Ct. 1295, 94 L.Ed.2d 151 (1987).

In sum, K & R's motion for summary judgment against the United States is granted. This leaves the priority between Faherty's and K & R's claims as the sole remaining issue. It is for Faherty to show that there is, in fact, substantial evidence to support the validity of his claim. If he is successful, the case will be scheduled for trial; if he is not, judgment can then enter. A hearing on this issue is hereby scheduled for Monday, June 20, 1988 at 10:00 a.m. in Courtroom 705.

SO ORDERED.